tion which has been commenced by the service of a summons and verified complaint. In such an action, in case the defendant fail to answer, he shall be deemed to have admitted the allegations of the complaint, and the court shall enter judgment without further proof. I do not think this is to be construed as meaning that in case the defendant does answer, by admitting the allegations of the complaint and pleading an affirmative defense, the plaintiff shall still be put to his formal proof. The obvious purpose of the amendment was to dispense with additional proof, where the complaint was verified and its allegations uncontroverted.

In Harley v. Fitzgerald, 84 Hun, 305, 32 N. Y. Supp. 414, it was held that in justice's court the right of a plaintiff to open and close the case is a substantial right, and a failure to grant it a fatal error. That case arose before the amendment, it is true; but it was held that the provision requiring the plaintiff to prove his case did not apply where the defendant appeared and answered. The learned counsel for the respondent attempts to distinguish it from the case at bar on the ground that there the complaint was not verified; but it cannot be that the Legislature intended by the amendment to give to an unverified complaint greater force than to a verified one, so that in the former case proof need not be made, while it would be exacted where the complaint was sworn to.

Even as to the suit and material for alteration, there was no issue raised by the answer in the form of a denial. The defendant admits the purchase, but denies liability because of the failure to make the suit fit. It is in the nature of confession and avoidance. But, as was said in Smith v. Coe, 170 N. Y. 162, 167, 63 N. E. 57, 58:

"There was no denial, general or specific, of the allegations of the complaint referred to, except so far as such denial could be spelled out or inferred from an inconsistent version of the transaction given by the pleader in the answer. The allegations of a complaint are controverted or put in issue only by a general or specific denial. A material fact alleged is not controverted or put in issue by a statement inconsistent with the facts alleged, or from which a general denial may be implied or inferred. Rodgers v. Clement, 162 N. Y. 422, 428, 56 N. E. 901, 76 Am. St. Rep. 342; Fleischmann v. Stern, 90 N. Y. 110; Marston v. Swett, 66 N. Y. 210, 23 Am. Rep. 43; Wood v. Whiting, 21 Barb. 190; West v. American Exchange Bank, 44 Barb. 175."

The judgment of the County Court and of the justice should be reversed, with costs. All concur.

---

MAYOR, ETC., OF CITY OF NEW YORK v. BROADWAY & S. A. R. CO.

(Supreme Court, Appellate Division, First Department. March 12, 1909.)

1. STREET RAILROADS (§ 38*)—REPAVING STREETS—NOTICE—WAIVER.
    Railroad Law (Laws 1890, p. 1112, c. 565) § 98, requires street railroad companies to keep in permanent repair that part of the streets between its rails and two feet on each side thereof, and authorizes the city to make repairs at the company's expense if the company fails to make them after 30 days' notice. One month before the act took effect, the commissioner of public works notified defendant company that certain streets were to be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

repaved, and demanded that the company relay its part. The company wrote that for any repaving done by the department of public works, for the expense of which the company was lawfully liable, it would reimburse the department. *Held*, that the company waived the statutory notice to repave, entitling the department to contract for the company's part of the work and to enforce reimbursement.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 109; Dec. Dig. § 38.*]

2. STREET RAILROADS (§ 38*)—REPAVING STREETS—DUTY OF COMPANY.

Railroad Law (Laws 1890, p. 1112, c. 565) § 98, requiring a street railway company to keep in permanent repair that part of the streets between its rails and for two feet outside thereof, requires more than a patching of an old pavement, when, through changed conditions, an improved kind of pavement is required.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 103; Dec. Dig. § 38.*]

3. STREET RAILROADS (§ 38*)—REPAVING STREETS—RIGHTS OF COMPANY.

While a street railway company could refuse to proceed under its franchise on the terms imposed by Railroad Law (Laws 1890, p. 1112, c. 565) § 98, requiring such companies to keep in permanent repair that part of the streets between its rails and for two feet outside thereof, having continued to operate, it became liable under the statute.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 109; Dec. Dig. § 38.*]

Appeal from Judgment on Report of Referee.

Action by the Mayor, Aldermen, and Commonalty of the City of New York against Broadway & Seventh Avenue Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Royal E. T. Riggs, for appellant.

Arthur H. Masten, for respondent.

INGRAHAM, J. In this case the plaintiff seeks to hold the defendant liable for the cost of repaving certain streets in the city of New York occupied by the defendant's tracks. John Kerr and others acquired the right to use certain streets in the city of New York for a street railroad under the provisions of chapter 513, p. 1042, of the Laws of 1860, and by an agreement with the individuals named in that act the rights thereby acquired were sold and transferred to the defendant, and by subsequent agreements and leases the defendant acquired the right to construct and operate its railroad in several other of the streets of the city of New York. It seems that prior to the year 1890 these streets had been paved with what was called "trap block pavement"; that that pavement had become much worn and out of repair, and it became necessary to replace it with a new and improved pavement. This trap block pavement had become obsolete, and a granite block pavement laid upon concrete was substituted for it. In the year 1890 the railroad law (chapter 565, p. 1082, Laws 1890) was passed, to take effect on May 1, 1891. Section 98 of that act provided that:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Every such corporation [street surface railroad company], so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs after the expiration of thirty days' notice to do so, the local authorities may make the same at the expense of such corporation."

This act had been passed in 1890, and was to take effect on May 1, 1891. After the act was passed, but before it took effect, the city had determined that this new granite block pavement was necessary, and on October 15, 1890, the commissioner of public works wrote a letter to the defendant, calling its attention to a former letter "of the 30th ultimo," which was not produced, but which is stated to have notified the defendant that the department was about to repave Church street, from Canal street to Chambers street, and that the defendant was responsible for the condition of the pavement in and about its railroad tracks, and that the department had called upon the defendant to state whether it would have the work done by the contractor of the city's portion of the work, or what the defendant proposed to do in the matter, and said that the commissioner had not received any reply to the letter, and therefore renewed the notice and request for a prompt reply; the letter then stating:

"If your company does not make arrangements for its share of the repavement work, the work will be done by this department, and the cost of repavement in and about the railroad tracks charged against the company."

On October 16, 1890, the defendant replied to this letter, stating that the defendant was not advised that it was responsible for any part of the expense connected therewith; but, if in error as to this, they would be glad to have the commissioner designate the authority for the obligation indicated by his letter. There is no letter of the commissioner of public works in reply to this letter of October 16th in evidence; but on March 21, 1891, the defendant wrote to the commissioner of public works that in reply to his letter "of the 26th ultimo" the company had to say that it would put its track rails in proper repair at the points indicated at or before the time when the new pavement was laid, "and for any repavement done by the department, for the expense of which it may be lawfully liable, it will reimburse your department." The case shows that there had been considerable correspondence prior to this time between the commissioner of public works and the defendant in relation to the repavement of various streets in the city of New York, and that the department had notified the railroad from time to time that it was the intention of the department to relay the streets through which the defendant's railroad ran with new pavement; and in this letter of October 15, 1890, express notice was given that if the defendant did not make arrangements for its share of the repavement work, the work would be done by the department and the cost of repaving in and about the railroad track charged against the company; and in reply to that letter the defendant stated that any repavement done by the department, for the ex-

pense of which it might be lawfully liable, it would reimburse the department.

As before stated, the general railroad law, imposing an express liability upon the railroad company for this pavement, had been passed, and was to take effect about a month after this letter was written. Here was an express notice given to the company that the streets were to be repaved, with a demand that the company should relay the pavements between its tracks, and a notice by the company that for any pavement for which it was legally liable it would reimburse the department for the expense. I think this was a clear waiver by the defendant of notice to repave, and justified the department in understanding that the railroad company did not wish to do the repaving itself, but authorized the department to repave the streets, and agreed to reimburse the department for the expense for which the railroad company would be legally liable. It is not essential that we should determine whether the actual notice that was given to the defendant by the plaintiff was sufficient under section 98 of the railroad law, because the act of the defendant was a distinct waiver of such notice, with an agreement to pay such part of the cost of the repavement as to which it was legally liable, if the city did the work. That justified the department in making contracts and going on with the pavements between the railroad tracks, as well as outside of them; and an obligation would then arise by which the railroad company would be liable for the cost of such pavement incurred by the city in carrying out the work.

The contracts proved by the plaintiff were all let after the law went into effect, with the exception of the Church street contract. That contract was dated December 11, 1890. Work was commenced on it on April 24, 1891, and the work was completed on June 4, 1891; and as to this contract, while it was dated prior to March 21, 1891, the date of the letter, work was not commenced until after that date, which was but seven days before the statute went into effect. So it seems to me that, whatever obligation there was upon the part of the plaintiff to give the defendant 30 days' notice, it was waived by this letter of the defendant, and the defendant was liable to pay for the cost to the city of all pavements in this street, which the defendant was bound to make, made after the receipt of this letter, upon which a liability was imposed by section 98 of the general railroad law. This section required the railroad to "have and keep in permanent repair that portion of such street," etc., "between its tracks, the rails of its tracks and two feet in width outside of its tracks." Having and keeping the street in permanent repair requires something more than patching up an old pavement, when, in consequence of changed conditions, a new and improved kind of pavement is required. It was so expressly held in Mayor v. Harlem Bridge, etc., Co., 186 N. Y. 304, 78 N. E. 1072.

I think, therefore, that the defendant waived the right to require notice under section 98 of the railroad law, that the city was authorized to go on and repave these streets, that the defendant was responsible

for the cost of such repavement, and that in this case for such cost the city was entitled to a judgment.

It is not necessary to discuss the constitutional objection raised by the defendant to the imposition of this liability. The defendant was under no obligation to operate its railroad in these streets in the city of New York. It could have resigned its franchise and refused to proceed under it upon the terms imposed by the statute; but, having accepted the franchise and having continued to operate its road, it became liable for the conditions imposed by the Legislature.

It follows that the judgment appealed from must be reversed, and a new trial ordered before the same referee, with costs to the appellant to abide the event. All concur.

CITY OF NEW YORK v. NINTH AVE. R. CO.

(Supreme Court, Appellate Division, First Department. March 12, 1909.)

1. STREET RAILROADS (§ 38*)— REPAVEMENT ALONG TRACKS — LIABILITY FOR COST.

Under a street railway franchise, requiring the grantee to keep the space between the tracks and for two feet on each side in thorough repair; under Laws 1860, p. 715, c. 411, confirming the grant, subject to the regulations imposed; and under section 98 of the general railroad law, effective May 1, 1891 (Laws 1890, p. 1112, c. 565), requiring all railroads to keep in repair the pavement in such space—a company acting under the franchise was bound to repair the space when necessary, and, having refused to do so, was liable to the city for the cost of repavement.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–105; Dec. Dig. § 38.*]

2. STREET RAILROADS (§ 38*)— REPAVEMENT ALONG TRACK—NOTICE BY CITY— WAIVER.

A street railway company waived requirements for notice to repave along its track where, in response to notice that unless the company repaved in certain streets the department of public works would do it at the company's expense, the company wrote the commissioner that it was advised that it was not responsible for repaving and that it did not desire to negotiate for repavement.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–105; Dec. Dig. § 38.*]

Appeal from Judgment on Report of Referee.

Action by the City of New York against the Ninth Avenue Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Theodore Connoly and Royal E. T. Riggs, for appellant.
Arthur H. Masten, for respondent.