THE CITY OF NEW YORK, Respondent, *v.* BROOKLYN, QUEENS COUNTY AND SUBURBAN RAILROAD COMPANY, Appellant.

THE CITY OF NEW YORK, Respondent, *v.* THE NASSAU ELECTRIC RAILROAD COMPANY, Appellant.

First Department, December 31, 1926.

Street railways — action to recover penalties under Railroad Law, § 175, for failure to pay percentages of earnings to plaintiff as required by franchise — receiver did not pay percentages until after date of accrual and refused to pay penalty — fact that railroad was in receivership does not prevent penalties from attaching on failure to pay — city was not required first to apply deposit put up as guaranty of payment of percentages — Civil Practice Act, § 49, bars recovery for more than three years prior to commencement of action — Statute of Limitations commenced to run for each day's delay as it accrued.

The penalties provided by section 175 of the Railroad Law for the failure of street railroads to pay the agreed percentage of the gross income on their franchise from the city of New York may be recovered on the failure of a receiver of the railroad to pay the percentages when due, although he did thereafter pay them to the city; the mere fact that the railroad is in the possession of a receiver does not obviate the payment of percentages and penalties for the failure to pay.

The fact that the contracts between the city and the railroads provided for a deposit to secure the faithful performance thereof and that the city should collect the annual charges or percentages " with interest, from the said fund after ten days' notice to the company " does not compel the city first to resort to the deposit but it has the option to do so, and if it does not do so, and the percentage on the gross income representing the annual charge is not paid when due, the penalty commences to run at once.

However, under section 49 of the Civil Practice Act, the city cannot recover penalties for more than three years prior to the commencement of the action. The Statute of Limitations commenced to run against the penalty recoverable for each day's delay as it accrued.

The contention by the respondent that a cause of action to recover the penalties does not accrue until the percentages are actually paid, cannot be sustained.

APPEAL in each of the above-entitled actions by the defendant therein from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of May, 1925, upon a verdict rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present.

*W. Harry Sefton* of counsel [*George D. Yeomans,* attorney], for the appellants.

*Elliot S. Benedict* of counsel [*John F. O'Brien* and *Charles W. Miller* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the respondent.

FINCH, J.   These actions were brought to recover penalties for failure to pay, when due, percentages of the earnings of the respective defendant street railroad companies under the provisions of contracts made by said companies in accordance with the requirements of section 175 of the Railroad Law.   The contracts provided that the respective railroad companies would pay certain percentages of their gross income for the privilege of constructing and operating certain sections of the railroads, according to the ratio of said sections to the entire road.   The railroads went into receivership in 1919 and the receiver took over the operation of the roads under the contracts in question.   The receiver failed to make payments due November 1, 1920, and November 1, 1921.   Said payments, however, were made by the receiver on December 27, 1921, whereupon the comptroller demanded the payment of the penalties. These penalties were not paid by the receiver.   On July 11 and December 21, 1923, the receivership of the respective railroads terminated and the receiver was discharged.   The decree in each case provided that all debts and obligations owed or incurred by the receiver would be assumed and discharged by the defendants, subject to any defenses thereto which the receiver might have had. The plaintiff commenced the present actions on June 10, 1924, and said actions resulted in the direction of a verdict for the plaintiff.

Section 175 of the Railroad Law, in so far as it imposes a penalty for failure to pay percentages when due, reads as follows: " The corporation failing to pay such percentage of its gross earnings shall, after November first, pay in addition thereto five per centum a month on such percentage until paid."   The appellants contend that the aforesaid language does not include the receiver of a railroad corporation within its penalty provisions.   In other words, the appellants are asking that the statute should be read as exempting the corporation from the statutory provisions when the corporation is run by a receiver rather than by those chosen by the stockholders. No such exemption appears in the statute.   So to hold would not only be doing violence to the language of the statute, but would also relieve the corporation from default in a payment which in all fairness should have been made when due.   The corporation received the money out of which the payment should have been made, and these moneys were in the nature of payments for the franchise.   As well might it be contended that the receiver was under no obligation to pay the percentages agreed to be paid for the privilege of constructing and operating the railroads as to exempt him from the penalties for failing to pay such percentages. The receiver adopted the contracts and operated the roads under them, and, therefore, is bound by the contracts, one of the pro-

visions of which is that article 5 of the Railroad Law should be complied with. This article 5 contains section 175, which, as noted, is the section imposing the penalties herein.

In *Central Trust Co.* v. *N. Y. C. & N. R. R. Co.* (110 N. Y. 250, 256) the defendant railroad company was insolvent and was being operated by a receiver, and the Court of Appeals, in holding the corporation through the receiver liable to pay a franchise tax, said: " An insolvent corporation in the hands of and operated by a receiver was not in the minds of the framers of the statute when providing for the enforcement of payment of taxes from what may be termed a going corporation. It may be admitted that, in a strict and technical sense, these taxes, when first imposed, are not a lien upon any specific property of the corporation. But we are of the opinion that the railroad when in the receiver's hands and operated by him, is operated under and by virtue of the franchise which has been conferred upon the corporation by the State, and that when he receives the gross earnings arising from its operation and has in his hands money enough to pay these taxes, the State has a paramount right to collect them before the moneys applicable to such payment shall be paid away by the receiver."

The Judicial Code of the United States (36 U. S. Stat. at Large, 1104, § 65)* provides that: " Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. * * *." As noted, the corporation, acting by the receiver, did in fact pay the percentages. The corporation, as shown, was liable also for the penalties.

The appellants rely upon the case of *U. S.* v. *Harris* (177 U. S. 305) as an authority to the contrary. That case, however, is not at all in point, since it was a suit to hold three receivers of a railroad company liable for penalties because of the acts of railroad employees. The court held that the receivers of a corporation were not within the letter or spirit of a statute making a corporation liable for acts of cruelty to animals. In the *Harris* case, because of the nature of the act prohibited by the statute, the question was whether the words of the statute were broad enough to include receivers, and to impose a personal liability upon the receivers. In the case at bar the inquiry is whether the corporation is exempt when it is operated by a receiver appointed by the court

---

* See United States Code, tit. 28, § 124.— [REP.

in the place of directors chosen by the stockholders. As already noted, no such exemption appears in the statute.

The appellants further rely upon the fact that under the contracts the railroad companies deposited with the city the sums of $5,000 and $2,500, respectively, as security for the performance by the companies of all the terms of the contracts, and particularly of the payments of the annual charges, coupled with the fact that the contracts provided that, in the case of default in the payment of the annual charges, the city " shall collect the same, with interest, from the said fund after ten days' notice to the company." It is the appellants' contention that the city was bound to look first to the fund on deposit for the payment of the penalties, and that no penalties could accrue under the statute as long as the deposit remained unimpaired. This position on the part of the defendants is not tenable. The city had the privilege of looking to the deposit for any default under the contracts, if it so desired, but it was not mandatory upon the city to apply this deposit to any particular default.

The judgment is excessive, however, in so far as it awards a recovery for penalties which occurred prior to three years before the actions were commenced. As to these the three-year Statute of Limitations would be a bar. This is an action upon a statute for a penalty or forfeiture given to the people of the State. Section 49 of the Civil Practice Act provides that such actions must be commenced within three years after the cause of action has accrued. Immediately upon default in the payment of the percentage, the right to sue for such percentage accrued. Each day thereafter an action for the penalty accrued, and might be maintained. The Statute of Limitations, therefore, commenced to run against the penalty recoverable for each day's delay as it accrued, at the rate of five per cent a month. In *People ex rel. N. Y. L. & I. Co.* v. *Roberts* (157 N. Y. 70) the Court of Appeals held that the Statute of Limitations barred actions for penalties after two years, and that the State Comptroller was required to resettle the account by striking therefrom taxes for more than six years and penalties for more than two years. At page 77 Judge GRAY said: " It results from the views which have been expressed that it was equally incompetent for the Comptroller to assess penalties for more than two years prior to the date of the assessment, when a recovery of the same could not be had by action."

In other States similar questions have likewise been the subject of judicial action. In *Udall Milling Co.* v. *A., T. & S. F. R. Co.* (82 Kans. 256) there was a penalty of one dollar a day on each car for each day's refusal to furnish railroad cars after a demand. The

court there held that each day's default was a distinct liability on which the Statute of Limitations began to run at the time it was incurred.   So, also, in *Boonville Special Road District* v. *Fuser* (184 Mo. App. 634) an action was brought to recover five dollars a day for obstructing a public road with a private fence.   The court instructed the jury that if they found the issues for the plaintiff, the penalty could not be assessed for any day earlier than one year before the filing of the suit, and that the aggregate amount assessed could not in any event include more than one year less one day.

The respondent urges that the cause of action for the recovery of the penalty does not accrue until the percentages are paid, thus placing special emphasis on the two last words of the phrase of the statute as above quoted.   That such is not the reasonable construction of when the cause of action for the penalty accrues, but that the same accrues upon each day's default, is seen by considering that if the former construction were adopted, perpetual non-compliance with the statute would result in similar exemption.   And it has been so held.

In *Wells* v. *Cooper* (57 Conn. 52) an action was brought to recover penalties for the neglect to file a certificate, as required by statute. The statute provided that one who failed to file the certificate in question " shall forfeit five dollars to him who shall sue therefor, for every month of the continuance of such neglect."*   The action was brought to recover penalties for sixty-six months, which was the period during which the certificate was not filed, and the action was commenced four months after it was filed.   It was pleaded as a defense that so much of the claimed forfeitures as had not accrued within one year prior to the commencement of the action were barred by the Statute of Limitations.   The plaintiff claimed that the neglect on the part of the defendant was one continuous act, becoming complete only when the statute was complied with.   The court said: " The argument is that the offense commenced when the neglect commenced and ended when the neglect ended.   The idea logically applied would seem to render it impossible to make one liable for any continuous neglect till the neglect had ceased. That is, the offense against the law is not complete till the law has been finally complied with.   So that perpetual disobedience to the law would confer perpetual exemption from its penalties.   This absurd result the counsel for the plaintiffs would of course disclaim, but in order to do so successfully, in our judgment, they would have to admit that the offense may be complete by a mere neglect for the prescribed statutory period.   *   *   *   In order to determine conclusively when the statute begins to run we have only to determine

---

* See Conn. Gen. Stat. (1875) p. 358, § 4; Conn. Gen. Stat. (1888) § 3013.— [REP.

when a suit for the recovery of any forfeiture might be first brought. There cannot be any doubt that a suit might be brought at the end of the first month's neglect, and repeated at the end of each subsequent month's neglect." This interpretation was reapplied in *Atwood* v. *Lockwood* (76 Conn. 555).

It follows that the judgment in each case should be modified by excluding therefrom penalties accruing prior to June 10, 1921, and, as so modified, affirmed, with costs to the respondent.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

In each case: Judgment modified by excluding therefrom the penalties accruing prior to June 10, 1921, and as so modified affirmed, with costs to the respondent.