THE CITY OF NEW YORK, Plaintiff, *v.* THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, Defendant.*

Supreme Court, New York County, February 18, 1927.

---

\* Affd., 225 App. Div. 794; affd., 251 N. Y. 583; writ of error denied, 280 U. S. ——.

*George P. Nicholson*, Corporation Counsel [*Charles W. Miller* of counsel], for the plaintiff.

*Alfred T. Davison* [*Addison B. Scoville* of counsel], for the defendant.

VALENTE, J. This action is brought by the city of New York against the defendant, a street railway company, to recover the sum of $14,692.07 as the cost of paving a section of First avenue, between Thirtieth street and Thirty-fourth street, in the borough of Manhattan, pursuant to the provisions of section 178 of the Railroad Law. The undisputed facts are as follows: On February 14, 1924, the plaintiff served a notice upon the defendant to repave the stretch of road upon which it maintained its tracks for purposes of a street surface railroad, that section of the roadway being in a condition of disrepair. These repairs were to be made within twenty days. On February 20, 1924, the defendant replied to the notice, saying that it was seriously considering the removal of its tracks. One month later the city received sealed bids for the work and on May 12, 1924, entered into a contract for the work. Previous to that the defendant received notice of the contract plan and was advised to adjust its tracks and structures to the

crowns and grades indicated on the track plan. On May 5, 1924, one week prior to the city's entry into the paving contract referred to, the Belt Line railroad, an associated company, notified the plaintiff that it had made application for the abandonment of its franchise and that the defendant would make a similar application. Ten days after the signing of the contract the defendant filed with the Transit Commission a declaration of abandonment and at the hearing upon the application for abandonment the reason given was the proposed paving of First avenue by the city. Approval of the application was given on June 10, 1924, and the declaration of abandonment filed in the office of the Secretary of State on June 23, 1924. Under section 184 of the Railroad Law the latter date marked the time of official abandonment. The contractor for the city commenced his work prior to the time and completed it at a cost of $14,692.07. Payment of this sum was demanded on January 15, 1925, but no part thereof has been paid. It may be added that the operation of the street railroad upon the stretch of road in question was continued until June 17, 1924. Upon these facts, it is urged by the defendant that by reason of its notice to the plaintiff prior to the letting of the contract that it would make an application for abandonment of its franchise, and by reason of the fact that it actually abandoned the use of its street, it is to be relieved from any liability for repairing. The correctness of this contention depends upon the interpretation of section 178 of the Railroad Law (as amd. by Laws of 1921, chap. 433), which reads as follows: " Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe; * * *. In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days' notice to do so, the local authorities may make the same at the expense of such corporation * * *." The words " or maintain " were inserted by Laws of 1912, chapter 368, which broadened the statute so as to impose a liability for repair and paving, whether the railroad actually used its line or merely maintained its tracks without operating thereon. The term " maintain " is defined in the Century Dictionary as " to hold in an existing state or condition; keep in existence or continuance; preserve from lapse, decline, failure or cessation." The plaintiff contends that the use

or maintenance of the tracks at the time of the notice to repair fixes the liability of the defendant regardless of the continuance or abandonment of the tracks thereafter. The determination of this question depends upon an analysis of the purpose of the statute. In *People ex rel. Buffalo & L. E. T. Co.* v. *Tax Commissioners* (209 N. Y. 496, 500), the court, citing the opinion of Chief Judge CULLEN in *City of Rochester* v. *Rochester Railway Co.* (182 N. Y. 99, 112), declared that: " The provision of the Railroad Law requiring street surface railroad companies to pay the cost of paving between their tracks and for two feet outside thereof is an exercise of the taxing power. The tax is paid in the form of paving and other materials for street construction." As a taxing statute it must be construed as imposing a liability upon the company in a proper case regardless of the extent of past or prospective future use of the tracks by the defendant company or any possible hardship which the application of the statute in the particular instance may cause. And the enforcement of the provisions of the statute has been declared mandatory. (*Conway* v. *City of Rochester*, 157 N. Y. 33.) There the city attempted to relieve the company of its duty in the matter and to let the contract on its own account. In a taxpayer's action to enjoin this the court held (at p. 38) that " The municipal authorities are given no authority to relieve the railroad corporation of the whole or any portion of the needed repairs, or to impose the whole or any portion of the cost upon the abutting owners or the city at large." If the statutory duty of the surface railroad company has become fixed, no estoppel on the part of the city to enforce this duty — such as might be spelled out from the evidence — can enter into the circumstances. On the day the notice of repair was given the street was in disrepair and the defendant was using and maintaining the tracks. The rule as construed in *City of New York* v. *Linch* (161 App. Div. 292) then became applicable: " If the statute is to have a practical construction, it must be that liability arises from the conjunction of use, disrepair and service of notice." It is true that very shortly after the notice the defendant ceased operation and maintenance, and on the strength of this fact it disclaims liability and cites in support of its contention the comment in *Mayor* v. *Broadway & Seventh Avenue Railroad* (130 App. Div. 834), where the court said: " The defendant was under no obligation to operate its railroad in these streets in the city of New York. It could have resigned its franchise and refused to proceed under it upon the terms imposed by the statute; but, having accepted the franchise and having continued to operate its road, it became liable for the conditions imposed by the Legis-

lature." Arguing from this, the defendant maintains that it did precisely what the court indicated it had the privilege to do — resigned its franchise before the city completed the work; and even when the city let the contract it knew of the intention to abandon. I do not think that the opinion just cited can be construed to support defendant's position. It has reference to a situation where a company, in view of prospective additional burdens imposed by a new statute, is impelled to abandon its franchise. But where such burdens have become fixed by actual notice under the authority of the statute it is too late for the defendant to renounce its privilege without discharging the burden previously imposed. As well might a taxpayer, who has become liable for a tax on his real property, attempt to secure partial relief by tearing down the building upon his land as a basis for a claim of reduction on the ground that he does not intend to use it. The case of *Shamokin* v. *Shamokin & Mt. C. Electric Ry.* (206 Penn. St. 625) is cited by the defendant in support of the opposite conclusion. There the defendant requested the municipal authorities in June, 1898, for permission to remove its sidings and place its main track on the center line of the street, and gave notice that if both requests were refused the defendant would remove the siding. The requests were refused. In February, 1899, the plaintiff authorized the paving of the street, and prior to the final adoption of this authorization defendant served notice that it would remove the sidings before the paving would begin. The municipality sought by injunction to restrain the company from removing the sidings, but the injunction was finally dissolved. The court below held that the notice of removal in February, 1899, was too late to relieve the company of its liability to pay for the paving. Commenting upon this, the higher court in reversing said: " This conclusion would be warranted if the borough had paved in reliance on the conduct of the company. But it did not. The council relied on the belief that as matter of law it could prevent the removal of the siding, and thus for all time place the cost of street improvements on the company. In this it was mistaken. It had notice nearly two years before of the company's intention to remove the siding, and had distinct notice before the approval of the ordinance and three months before it incurred any liability of the company's determination to remove it as soon as the frost was out of the ground." A mere reading of the opinion in that case is sufficient to show marked distinguishing features, particularly in respect to the notice of intention to abandon served long before the notice to repair, and in regard to the deliberate efforts of the municipality to prevent the defendant from abandoning its

sidings, so as to saddle the burden of paving upon it. Of course, a large measure of equity — although far less strong than in the Pennsylvania case — is with the defendant here. But the mandatory provisions of the taxing statute cannot be disregarded. Like many statutes of this character, it may cause exceptional hardship in individual cases, which the court is without power to redress. Judgment must be directed for the plaintiff in the sum of $14,692.07, with interest from January 15, 1925.