AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO.*
No. 405.

Circuit Court of Appeals, Second Circuit.
Aug. 13, 1936.

*Writ of certiorari denied 57 S. Ct. 235, 81 L. Ed. ——.

Cotton, Franklin, Wright & Gordon, of New York City (Boykin C. Wright and J. A. Fowler, Jr., both of New York City,

of counsel), for appellants-appellees receiver and reorganized company.

Paul Windels, Corp. Counsel, of New York City (Joseph L. Weiner and Herman Horowitz, both of New York City, of counsel), for appellee-appellant City of New York.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

In a creditor's suit in equity brought in the District Court for the Southern District of New York against New York Railways Company, a receiver of all the property of the defendant was appointed on March 20, 1919. This receiver duly qualified, and thereupon numerous surface street railway tracks, franchises, and other property of the defendant in the city of New York went into his custody. Pursuant to his duty to determine within a reasonable time whether to accept all of said property or to renounce a part (Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915; American Brake Shoe & Foundry Co. v. New York Railways Company [C.C.A.] 282 F. 523), the receiver investigated the situation, and within such reasonable time secured an order from the court on September 12, 1919, providing in respect to the property described in the following partial quotation of the ˚order that " * * he hereby is authorized to and directed for the time being and until further order of this Court to discontinue the operation of the storage battery car lines described in said petition and known as the Avenue C line, the Spring and Delancy Street Line, the Madison Street Line and the Sixth Avenue Ferry Line.

"2. Nothing in this order contained shall be construed as a direction or consent to the abandonment of any franchise or portion thereof comprised in the routes of any of the aforesaid battery lines."

After obtaining this order, the receiver did discontinue operation of the named lines and never resumed it. Nor did he thereafter keep those tracks or the pavement within and adjacent thereto in repair. The paving claims hereinafter to be considered. in respect to these tracks are known as the class B claims.

There were also certain surface street railway tracks on which the defendant had discontinued operation before the receiver

was appointed and which the receiver never operated at all. He did nothing to keep those tracks in repair or the pavement within and adjoining them. The paving claims relating to them are known as the class A claims.

There were also certain tracks in Madison avenue which ran down Fourth avenue and the Bowery to Park Row which the defendant had operated under a lease from the New York & Harlem Railroad Company, and in connection with this service had run cars to and from this line and the Williamsburgh Bridge over tracks in Delancy street. In January, 1920, the receiver was authorized by the court to abrogate the lease, and did so. Thereupon the lessor operated the leased line itself, but discontinued operation along a track in Delancy street. The receiver, being convinced that it was desirable to resume operation along Delancy street, applied for authority to do that, and on January 29, 1920, obtained it in an order of the court permitting him to operate storage battery cars thereon and over cross-overs in Spring street near Broadway and in Delancy street near Clinton street. The paving claims known as class C accrued on these storage battery tracks after the receiver was appointed but before January 29, 1920.

All of the claims rest upon the provisions of section 178 of the New York Railroad Law (Consol.Laws, c. 49), which reads in part as follows:

"Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days' notice to do so, the local authorities may make the same at the expense of such corporation."

All the claims are for the actual cost of the paving repairs made after the required notice had been given the receiver and he had neglected to make them. It appears to have been his practice to let the city make

all such repairs and to pay for those which were not questioned—a large part of all the paving claims presented to the receiver by the city.

Failing to collect on the claims now in issue, the city sued the receiver upon them in the state court. The receiver answered, and after considerable delay secured an injunction in the court below staying the prosecution of the actions in the state court. The city moved to vacate the injunction, but later withdrew its motion and .came into the District Court for hearing on the merits, where all the class A claims and all of the class B claims accruing after May 1, 1925, were disallowed, and the city appealed from that part of the order; all the class C claims and those in class B accruing before May 1, 1925, were allowed, and the receiver appealed.

■ Liability as to all of these claims depends wholly upon the application and meaning of the statute above quoted in part and especially upon the construction to be given the phrase "so long as it shall continue to use and maintain any of its tracks." This portion of the statute formerly read "so long as it shall continue to use any of its tracks," but it was amended in 1912 by adding after "use" the words "or maintain." It was held in City of New York v. Linch, 161 App.Div. 292, 146 N.Y. S. 357, affirmed 213 N.Y. 638, 107 N.E. 1074, that a receiver was not liable for paving claims under the statute as it stood before the amendment when he had not operated cars on the tracks or taken any affirmative action toward the exercise of dominion over them. The amendment, however, was either a useless duplication of what had been covered by the word "use" in the original statute or it did change its scope either by way of limitation or extension. That there was no restriction in the field of application is clearly shown by the use of the disjunctive "or," and "maintain" certainly extends beyond what is use as defined in the Linch Case. So we conclude that the statute as amended was intended by the Legislature to cover instances not within it before and among them a situation where, as here, tracks were allowed to remain under conditions which left them available for use by the receiver whenever he might decide to use them in the performance of his duties in the administration of the receivership in

accordance with the law. That is in accord with the effect given the amendment in The City of New York v. Dry Dock, East Broadway & Battery Railroad Co., 135 Misc. 678, 240 N.Y.S. 744, affirmed 225 A.D. 794, 232 N.Y.S. 715, affirmed 251 N.Y. 583, 168 N.E. 436, certiorari denied 280 U.S. 603, 50 S.Ct. 86, 74 L.Ed. 648, and serves to distinguish the Linch Case.

■ We have no hesitation in saying that the receiver was under the same obligation as to paving claims as the corporation in receivership would have been had no receiver been appointed and the situation in other respects had been the same. The imposition of liability under the statute is an exercise of the taxing power. People ex rel. Buffalo & Lake Erie Traction Co. v. State Board of Tax Commissioners, 209 N.Y. 496, 103 N.E. 776; The City of Rochester v. Rochester Railway Co., 182 N.Y. 99, 74 N.E. 953, 70 L.R.A. 773. And general liability of the receiver for taxes while operating the surface street railway system in receivership is plain enough. Michigan, by Haggerty v. Michigan Trust Co., Receiver, 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136. Nor is that disputed here. With the exception of the objection that paving notices under the statute were given in respect to the class C claims before the receiver was authorized to or was actually operating those tracks, the entire issue of liability is whether the statute embraced the claims. As we hold, however, that the receiver maintained the tracks while he allowed them to remain physically in the streets and was able to use them whenever he saw fit to exercise his right so to do in accordance with the authority of the court, it follows .that the class C notices were sufficient.

None of the tracks involved in the class A claims were ever operated by the receiver. The use of all of them had been discontinued by the corporation before the receivership, some at least as early as 1912. It is true, however, that the court made findings of fact and conclusions of law in part as follows:

"51. The tracks at all of the foregoing locations[1] had been constructed pursuant ferred stock of transferor, and assumption to franchises owned by the defendant, which franchises authorized the maintenance and operation of the tracks and railroad. The orders appointing the temporary

---

[1] All the locations here involved.

Receiver and Receiver conferred full power and authority upon such Receiver and his successor to take and maintain and operate the railroads, franchises and tracks of the defendant, including all the locations comprising Classes A, B, and C, and enjoined the defendant and all other parties whomsoever from interfering in any way whatever with the possession or management of any part of the property for which the Receiver is hereby appointed, or interfering in any way to prevent the discharge of his duties or his operation of the same. Said railroads, tracks and franchises were included under the liens of the refunding and adjustment mortgages and the orders appointing the Receiver as Receiver in foreclosure conferred upon said Receiver power and authority to maintain and operate all such tracks, franchises and railroads, and contained similar injunctive provisions. In pursuance of said orders the railways, franchises and tracks of the defendant came into the custody of the said Receiver who thereupon and at all times thereafter had control of the same generally without there being any order of the Court which provided for any overt act on the part of the Receiver which indicated that said custody and control did not include each and every of the tracks constructed pursuant thereto existing at the various locations comprised in Classes A, B, and C. The injunctive provisions above mentioned were never modified with respect to the property here in question."

■ Thus it appears that all of the tracks where the paving for which the class A claims were presented came into the custody of the receiver who had not renounced this property as burdensome when the paving notices were given and the work was done. And so the claims accrued while he maintained the tracks under the above statute, in that he, by failing to renounce the property, kept it in the receivership available for use in the sense that he could have operated cars thereon under the direction of the court while the defendant and all others were precluded by the injunction from interference. And so, while the tracks so under his control were physically in the streets, he maintained them there within the purview of the statute and was liable for the paving repairs. Aside from what comparatively slight damage to the pavement could possibly have resulted from the actual operation of cars over the tracks, the presence of those tracks in the streets had the same effect on the pavement within the rails and adjacent thereto as they would otherwise have had. Liability for paving claims was one of the factors which should, and doubtless did, have its effect on the mind of the receiver. But, even so, the fact remains that he failed to renounce the property and thereby rid himself of the liability. Having retained it, he kept the incidental burden. The decree is modified to allow class A claims.

On May 1, 1925, New York Railways Corporation having acquired title to most of the receivership property pursuant to a plan of reorganization, the receiver ceased all operations and never resumed any. A part of the receivership property which did not pass to the new corporation consisted of certain tracks on which the defendant was operating storage battery cars at the time the receiver was appointed, which operation the receiver discontinued in accordance with the order of September 12, 1919, above quoted in part. The claims in class B relate (1) to paving along those tracks before the receiver stopped all operation on May 1, 1925, and turned over all property considered of value to the new corporation pursuant to the reorganization plan, and (2) to paving along those lines while they remained in the streets for about two years thereafter. The claims accruing prior to May 1, 1925, were allowed and those accruing later were disallowed, as the court was of the opinion that the receiver at that time abandoned the tracks.

■■ As to the part of the claims which accrued before May 1, 1925, the receiver contends that he is not liable because the order of September 12, 1919, coupled with the fact that he never used the tracks, shows that he renounced that property. We cannot so construe the order, but agree with the court below as to its effect. There is nothing ambiguous about the language used. It authorizes merely a temporary discontinuance of operation. Care was taken to provide, in so far at it was then possible, for the retention of power to authorize the running of cars on those tracks should future developments make it the duty of the receiver to do so. By maintaining the availability of those tracks for use, the receiver maintained them under the statute, and was liable for the paving during the period of such maintenance for

the reasons stated in discussing class A claims. But we agree also with the trial court that on May 1, 1925, the receiver abandoned those tracks. On that date he took action which prevented him from thereafter operating cars upon them with any reasonable prospect of benefit to the receivership. Since it had not been considered good management to operate them as a part of the surface system, it is clear enough that they could not be used alone. The tracks were but small fragments of what had been the system in receivership. The new company would not take them, and it may be taken for granted that they were nothing but a nuisance. The new company rejected them of right in accordance with an order of the court in respect to the sale, and all this is enough to show that thereafter the receiver in no sense maintained those tracks within the purview of the statute.

■ The class C claims relate to paving on the Delancy-Spring street tracks during approximately four months which intervened between the time the receiver was appointed and the time he applied for and received authority to operate cars over those tracks after the New York & Harlem Railroad Company lease had been abrogated as above noted. The receiver did thereafter actually use the tracks. For the reasons already stated, the court correctly held that the tracks were maintained by the receiver during the time the paving claims accrued.

■■ It is insisted that, even though these paving claims are a liability of the receiver and were not paid when presented, interest on them can not be recovered. Leaving for the moment the recovery of interest on claims against a receiver as such, we find that there has apparently been no direct decision as to whether or not such claims bear interest as against an owing corporation not in receivership, though in City of New York v. Dry Dock, E. B. & B. R. Co., 135 Misc. 678, 240 N.Y.S. 744, some interest was in fact included in the judgment. Yet we can perceive no good reason why interest should not be recoverable where, as here, work and materials were supplied by the city to do the paving the owner of the tracks was by statute required to do, which statute expressly provided that otherwise it might be done at the expense of the owner. Though the liability was imposed under the taxing power, the statute also created and conferred upon "the local authorities" a right to pave at the expense of the owner of the tracks, provided the owner neglected to do the paving for twenty days after being given notice to do so. It is that portion of the statute which is directly in point here and from that this liability flows. Generally speaking, interest is allowed, where there is no express contract or provision for its payment, because of some unreasonable or vexatious delay in paying a debt which is liquidated so that the debtor knows what must be paid to discharge it. Compare In re Paramount Publix Corporation (Greenberg v. Paramount Pictures, Inc.) 85 F.(2d) 42 (C.C.A.). Since 1927, section 480 of the New York Civil Practice Act, as amended, has provided for the recovery of interest on the total amount of a verdict, report, or decision to be included in the amount of the final judgment and for the recovery of interest in actions on express or implied contracts, except those to marry, whether the principal sum is liquidated or unliquidated. And this applies to claims accruing before the amendment as well as to those after. Preston Co. v. Funkhouser, 261 N.Y. 140, 184 N.E. 737, 87 A.L.R. 459. See Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243. The paving statute, permitting the city to do the paving at the expense of the owner of the tracks, while it made no mention of interest, certainly did not contemplate any shifting of the burden in part to the city. This would inevitably happen if an owner, bound to pave, could by its neglect make it necessary for the city to do the work and provide the amount of its cost in every real sense for the use of the owner without charge so long as that owner would and could put off payment. In our view, the statute requiring the owner to bear the paving expense should be construed to mean that, when a claim is presented, and the owner knows how much that expense actually is, payment is due and interest accruing thereafter is to be included as a part of the expense to the city made necessary both by the neglect of the owner to pave after notice and the neglect to pay after knowledge of the amount due. The owner cannot be allowed to enjoy the use of the city's funds without compensation when the statute provides that the owner shall bear the expense of the paving.

Nor do we believe that it makes any difference that these claims were against a receiver. See American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway, 233 U. S. 261, 34 S.Ct. 502, 58 L.Ed. 949; Pennsylvania Steel Co. v. New York City Ry. Co. (C.C.A.) 216 F. 458, 471; City of New York v. Brooklyn, Q. C. & S. R. R. Co., 219 App.Div. 90, 219 N.Y.S. 399. The reason for denying interest in Thomas v. Western Car Co., 149 U.S. 95, 96, 13 S.Ct. 824, 37 L.Ed. 663, is absent here as it was in the American Iron & Steel Mfg. Co. Case, supra. Nor do we find City and County of Denver v. Stenger (C.C.A.) 295 F. 809, to be contrary. There interest was not allowed on the amount to be paid by the receiver for use and occupation, since the time for payment was to be determined by the court in the exercise of its discretion.

This receivership continued until the property was sold in 1925, and, as a part of the purchase price, the buyer agreed to pay any indebtedness, obligations, or liabilities of the receiver up to the time of the delivery of possession of the property sold, "whether in suit or presented or not presented, arising during the periods of operation by said Receiver of the railways and property in his possession which shall not have been paid and discharged at the time of said sale or sales and which the income and revenue derived from the operation of said railways and property by said Receiver are insufficient to pay. * * *"

The order appealed from allowed interest to May 1, 1925, but not after that date. We have agreed with the court below that no new claims accrued against the receiver after he disposed of the tracks by selling or abandoning them as of that date, but the neglect to pay claims which accrued prior thereto continued afterwards, and so did the same reasons which make interest payable at all. The city has been deprived of the money due it the same as before, and the obligation to pay remained the same. The only change was that the purchaser was bound to pay as above provided in the final decree. Interest, therefore, should be allowed after May 1, 1925, as well as before that date.

Decree modified in accordance with this opinion.

SWAN, Circuit Judge, dissents in part without opinion.