142 So.2d 537 (1962)
Virgil WALL
v.
Calvin WINDMANN, Royal Indemnity Company, and Allstate Insurance Company.
No. 609.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1962.
Rehearing Denied July 2, 1962.
Sessions, Fishman, Rosenson & Snellings and Curtis R. Boisfontaine, New Orleans, for defendants-appellants.
Charles G. Merritt, New Orleans, for plaintiff-appellee.
Before McBRIDE, SAMUEL and JOHNSON, JJ.
McBRIDE, Judge.
This is a direct action for a large sum as damages for personal injuries sustained by plaintiff in an unusual accident, which is brought against Allstate Insurance Company (the only remaining defendant) as the liability insurer of the tort-feasor, which in defense of the suit makes the contention that the accident was, by specific provisions of the policy, excluded from coverage. The insurer has appealed from a judgment in plaintiff's favor for $6,185.
On October 23, 1957, plaintiff, Virgil Wall, and one Calvin Windmann, automobile mechanics, both being employees of Dumas Chevrolet Company, an automobile *538 dealer in New Orleans, were working together in the employer's establishment adjusting a new automotive pickup truck so as to make it fit to deliver to a customer of the dealer. Plaintiff, Wall, standing in front of the vehicle, the hood of which was open and up, was working on the engine while Windmann was inside the cab with his legs upon the seat and his back on the floor making some adjustments under the instrument panel or dashboard. Each of the men knew the other was working on the truck, but were unable to see each other because of the open hood.
At one stage of the work plaintiff called to Windmann to start the motor, and Windmann, while in the upside-down position, turned the ignition key and pressed the starter button unaware that the truck was in gear or that Wall was in front of the truck. The vehicle lurched forward pinning plaintiff's right leg between a workbench and the front bumper, causing severe injuries.
Windmann's negligence is manifest and is conceded by the insurer which pleads and argues that Wall was guilty of contributory negligence which bars a recovery in that he remained in front of the truck, it being said that he should have known that when an automobile is started, it might go forward and could possibly inflict injury and that he should have removed himself to a place of safety upon requesting Windmann to start the motor. We do not think there was contributory negligence. Both of these persons were automobile mechanics and we suppose experienced in their trade, and Wall had the right to expect and believe that his partner would not set the engine in motion while the truck was in forward gear.
Windmann is the insured under a policy of insurance issued by Allstate Insurance Company, under which that company agreed to pay on behalf of the insured all sums which he shall become legally obligated to pay as damages arising out of the "ownership, maintenance or use" of Windmann's automobile "or any non-owned automobile." The latter phrase, according to policy definition, means an automobile not owned by Windmann. The insurer is seeking to absolve itself from contractual liability by virtue of an exclusion in the policy which provides that coverage does not apply "to a non-owned automobile while used (1) in the automobile business by the insured * * *."
The point is then sought to be made that the automobile-truck was "non-owned" by Windmann and was being "used" by him in the automobile business; hence there is no liability on the insurer's part.
Appellant cites several Louisiana cases which it maintains would support its position that Windmann, in his upside-down position on the floor of the cab of a vehicle which was in the employer's establishment, engaged in adjusting the mechanism under the dashboard, was "using" the vehicle. None of the cases cited contain facts bearing any resemblance to those existing in the instant case, nor are the cases otherwise pertinent.
The provisions of the policy, which to our minds are as clear as language can make them, set at nought the defense the insurer attempts to raise.
Legal agreements have the effect of laws upon the parties, and courts are bound to give legal effect to all such contracts according to the true intent of the parties, which is to be determined by the words of the contract when they are clear and explicit and lead to no absurd consequence. LSA-C.C. art. 1945.
The insuring clauses of the contract protect the insured from liability arising out of the "ownership, maintenance or use" of the owned or non-owned automobile, and the three terms employed in the policy setting forth the conditions under which the insurer was to be liable must be given effect, each of which, "ownership," "maintenance" or "use," is general in nature and *539 covers a situation different from the others. In Webster's New International Dictionary, Second Edition, one of the definitions of the word "maintenance" is: "3. The upkeep of property, machinery, equipment, etc." One definition of the word "use" as appears in the same authority is: "2. To convert to one's service; to avail oneself of; to employ; as, to use a plow, a chair, a book; an artist uses a model or an author uses a neighbor as a character in his story."
The truck was not being used by Windmann when plaintiff's injuries occurred, but Windmann's activity in making adjustments thereto in order to ready it for delivery to the purchaser would constitute maintenance, and defendant's liability to plaintiff for damages by reason of Windmann's "maintenance" of the non-owned automobile is certain. In Morris v. American Liability & Surety Co., 322 Pa. 91, 185 A. 201, the Supreme Court of Pennsylvania dealt with a policy insuring against liability arising from "ownership, maintenance, manipulation or use," and held that it particularly applied to acts of repair which were not included within the term "operation," but which were in the category of "maintenance." Said the Court:
"The word `maintenance,' used in this policy, covers all acts which come within its ordinary scope and meaning. To `maintain' means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition. See City of New York v. Dry Dock, etc., Co., 135 Misc. 678, 240 N.Y.S. 744, 746; E. E. Kelly & Co. v. United States, 17 C.C.P.A. (Customs) 30, 32; cf. Steir v. London Guarantee & Accident Co., 227 App.Div. 37, 237 N.Y.S. 40, 41, affirmed 254 N.Y. 576, 173 N.E. 873. See, also, Pennsylvania R. Co. v. Pennsylvania-Ohio Electric Co., 296 Pa. 40, 45, 145 A. 686. In a wide variety of situations the word `maintain' has been taken to be synonymous with `repair.' See 2 Words and Phrases, Fourth Series, 610, and prior editions. This is the usual meaning, the dictionary meaning, and the meaning which must control in the absence of a clear expression of a contrary intention. Restatement of Contracts, § 235(a). Here the act which gave rise to the injury for which a judgment was recovered took place while an employee of the assured was in the act of repairing an essential part of the car, and, under the circumstances, was expressly within the term of the policy specified as `maintenance.'"
The evidence shows Wall received a crushing injury to the right knee which brought about Pellegrini-Stieda's disease, which is the name applied to calcification in the medical collateral ligament at its point of attachment to the medical femoral condyle, which disease follows a tearing or stretching of a ligament. The condition resulted in a 30 to 35 per cent residual permanent disability of the right knee joint. Plaintiff still suffers pain upon changes in the weather or when his leg snaps. He is unable to flex the limb or stop or kneel. When his leg snaps he must stop and rest before proceeding on with any activity. He will have a permanent limp. In addition to this severe injury plaintiff also had contusions of the back and of his right hip.
The trial court allowed plaintiff $6,000 for his personal injuries, plus $185 for medical expenses, etc.
Our opinion is that the award is not excessive in view of the serious injury and the permanent residual resulting therefrom and in view of the fact that plaintiff's trade is that of automobile mechanic.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.