**CIRCUIT COURT OF ARLINGTON COUNTY**

Government Employees Ins. Co.

v.

John H. Wharen and
John Owen Connington

August 9, 1979

Case No. (Chancery) 29385

By JUDGE CHARLES H. DUFF

Two basic questions are presented for decision by this Petition for Declaratory Judgment. The essential facts are not in dispute and for clarity may be summarized as follows.

Petitioner GEICO issued to John Connington its standard automobile liability policy which was in full force and effect on November 8, 1977. Connington, John Wharen and John C. Violet had been together the night of November 7th. All had been drinking. Some time after midnight Connington drove the car in an erratic manner, swerving on the road and striking the curb on at least one occasion, causing damage to a rear tire. There apparently had been some argument between Connington and Violet in the car. All three of the men went to the rear of the car and opened the trunk for the purpose of securing tools to repair the tire. During the course of continued argument, Wharen and Violet started to walk away from the car, the latter stating that he was going to walk home. Connington then removed a loaded rifle from the trunk, pointed in the direction of the other two men and fired the weapon, causing serious bodily injury to Wharen. To recover damages for such injuries Wharen has instituted a civil action against Connington.

After testimony was taken, the advisory jury in this action answered three questions as follows:

Question: Did John Connington intend to fire the gun?
Answer: Yes.

Question: Did John Connington intend to cause bodily injury to persons, among whom was John Wharen?
Answer: Yes.

Question: Did John Connington intend to cause bodily injury specifically to John Wharen to the exclusion of others?
Answer: No.

Upon this background, GEICO seeks a declaration as to its rights and duties in regard to defense of the *Wharen v. Connington* lawsuit. The two basic issues for decision are: (1) in the light of the jury's response to the Interrogatories, does Exclusion B, excluding coverage for bodily injury caused intentionally by or at the direction of the insured, apply; and (2) did the loss arise out of the ownership, maintenance or use of the owned automobile?

With respect to the first issue, there was ample credible evidence to support the jury's response to the three Interrogatories. Without straining the meaning of the words used, the jury found that the firing of the gun by Connington was an intentional act and, further, that Connington intended to cause bodily injury to persons, among whom was John Wharen. Under these circumstances I am of the opinion that the language of the Exclusion clearly embraced this type of a factual pattern. The case is distinguishable from several cited where a defendant intends to fire a weapon but does not intend harm to anyone or to harm the particular victim. As to the latter, the injury has been held on occasion not to be intentionally caused but accidentally caused. However, in this case, and under these peculiar facts, the jury's verdict has settled what was in Connington's mind. He intended injury and he intended injury to a group of two people, one of whom was John Wharen.

The second issue involves the insuring agreement whereby the company is obligated to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury "arising out of the ownership, maintenance or use of the owned automobile," GEICO contends that the shooting was in no way connected with the ownership, maintenance or use of the vehicle. Connington, on the other hand, poses the intriguing nexus between both use and maintenance and the shooting. He asserts that the use of the car (erratic driving) gave rise to the argument, or vice versa, and that this in turn caused the vehicle to strike the curb and damage the tire. It was during the effort to repair the tire, with the argument continuing, that the shooting occurred.

All parties concede that there must be some showing of a causal connection between the ownership, maintenance or use of the vehicle and the injury in order to effect coverage. However, such a nexus is not tantamount to a direct proximate cause relationship. Notwithstanding this broadened concept, I am of the opinion that it was not within the contemplation of the parties at the time of contracting to cover any possible injury regardless of how far removed such injury might be from the "use" of the car. The argument presented, while enticing, is not persuasive.

Similarly, with respect to the "maintenance" concept, there must be shown a more direct nexus between the instrumentality causing the injury and the repair of the vehicle. For example, in *Morris v. American Liability and Surety Co.*, 185 A. 201, an injury occurred while hammering a wheel rim into place after repairing a tire; in *Wall v. Windmann*, 142 So. 2d 537, a fellow employee negligently started an automobile while it was in gear, causing it to lurch forward and injure the plaintiff; and in *Knight v. Thomas*, 141 So. 2d 134, the insured, with the plaintiff's help, attempted to dislodge a bearing and a sliver of steel struck the plaintiff. Coverage was found to exist under the maintenance concept of the insuring agreement. In the present case, however, there is a total absence of a showing of any conceivable connection between the rifle and the repair work being done on the car.

As stated by the court in *State Farm Mutual Auto Insurance Co. v. Centennial Insurance Co.*, 543 P.2d 645:

> Thus before an injury arises out of the use of a vehicle, the vehicle must contribute in some fashion towards producing the injury; the vehicle must be more than the coincidental place in which the injury occurred. The crucial question is what motoring risks did the parties intend to cover by the automobile policy.

Accordingly, both of the issues presented at argument must be answered adverse to the position of John Connington. Mr. Miller should prepare an appropriate decree granting the relief prayed for and submit the same to Mr. Arts for approval as to form, the preservation of exceptions, and due endorsement.